IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Glenna Ghant, ) | Case No. 0:22-cv-03818-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Sherer Dental Laboratory, Inc., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiff's motion for partial summary judgment and Defendant's motion for summary judgment. [Docs. 24; 25.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings.

On February 28, 2024, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Defendant's motion for summary judgment be granted and Plaintiff's motion for partial summary judgment be denied. [Doc. 38.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id*. at 16.] Plaintiff filed objections on March 27, 2024, and Defendant filed a reply to Plaintiff's objections on April 10, 2024. [Docs. 42; 43.]

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the

Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate

specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

The Fourth Circuit summarized the Court's obligation when faced with cross motions for summary judgment in *Rossignol v. Voorhaar*:

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any

3

> competing, rational inferences in the light most favorable to the party opposing that motion.

316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

## **BACKGROUND**

Defendant is a dental prosthetic devices company that employed Plaintiff beginning in 1990 in its Rock Hill, South Carolina, facility. [Docs. 25-4 at 1–2; 24-4 at 6 (16:2–3).] Plaintiff was employed as a porcelain stacker/ceramist on the "fixed side" of the lab, which refers to fixed dental or "anything that's adhered to the mouth." [Doc. 24-2 at 10 (29:4–14), 12 (31:1–4).] There are four positions on the fixed side of the lab: Porcelain Stacker/Ceramist ("Ceramist"), Contourer, Opaque, and Stain & Glazer. [Doc. 24-3 at 11–14 (26:12–29:13).]

Plaintiff was assigned to the position of Opaque for her first two or three years of employment and then worked as a Ceramist for 27 years. [Doc. 24-4 at 7 (17:9–25).] It is largely undisputed that Plaintiff had experience in all four positions on the fixed side of the lab and that she received satisfactory reviews throughout her employment. [Docs. 24-1 at 2; 25-1 at 3; 24-4 at 8 (18:1–5).]

On May 19, 2020, Plaintiff fell off a ladder at work and broke her left hip and wrist. [Docs. 24-4 at 17–18 (27:10–28:9); 42-2 at 3.] She remained out of work until her physician, Madhav Karunakar, M.D., released her to return one year later on May 17, 2021, with the restriction of "no sitting for longer than 2 hours without a break." [Doc. 24-2 at 76.] On May 11, 2021, Plaintiff had a phone conversation with Nancy Sturgis, Defendant's controller and a human resources employee, in which Sturgis informed Plaintiff that she could not return to work on May 17, 2021, because there were no open positions for Ceramists and they could not accommodate her restrictions. [Docs. 24-2 at

4

27 (46:14–17), 90; 25-4 at 5.] Sturgis memorialized the conversation in a letter she sent to Plaintiff dated May 11, 2021, in which she also stated that they would reevaluate the situation after Plaintiff's doctor's appointment scheduled for June 22, 2021. [Doc. 24-2 at 77.] After the follow-up visit on June 22, 2021, Dr. Karunakar released Plaintiff to return to work "with restrictions indicated on [the] Full Duty Job Description form," which included lifting restrictions of 0–5 pounds for 30 minutes to 2.5 hours/day (the "Karunakar Release"). [Doc. 25-4 at 42–43.]

On June 22, 2021, Plaintiff began calling Sturgis "practically every day" to discuss returning to work. [Doc. 24-2 at 46–47 (68:17–69:11).] When asked about these calls, Sturgis testified that Plaintiff "would want to return to her job. We didn't have an open position. It was basically the same discussion." [*Id*. at 48 (70:9–13).] Sturgis testified that Defendant allowed Plaintiff to remain an active employee, however, in order to continue receiving benefits. [*Id.* at 46–47 (68:25–69:4).] On March 7, 2022, Defendant terminated Plaintiff's employment, informing her that "we do not have a position open to offer you at this time." [Doc. 25-4 at 44.]

Plaintiff has since submitted evidence of four job positions that became available between Plaintiff's release to return to work on June 22, 2021, and Plaintiff's termination on March 7, 2022: a dental cad-cam technician trainee position in September 2021; a model & die lab technician position in October 2021; a Ceramist position in January 2022; and an inventory associate position in February 2022. [*See* Doc. 24-6 at 2–5.] Plaintiff has also submitted as evidence a vocational assessment report created by Johnson Consulting (the "Vocational Assessment") on December 7, 2022, that was based on an objective functional capacity study conducted on October 19, 2021 (the "Functional

5

Capacity Study"), and a June 22, 2021, report from Suman Medda, M.D. at Atrium Health Orthopedics (the "Medda Report"). [Doc. 24-5.] The Vocational Assessment noted that the Functional Capacity Study concluded that Plaintiff could lift and carry up to 20 pounds and that Dr. Medda assigned Plaintiff a 5% impairment rating to Plaintiff's left hip and a 10% impairment rating to her left hand. [*Id*. at 3.] But, there is no evidence—and Plaintiff does not argue—that the Vocational Assessment, the Functional Capacity Study, or the Medda Report were provided or communicated to Defendant prior to this litigation.[1] [*See generally* Doc. 42 at 14–15; *see also* Doc. 24-2 at 73 (106:14–16).]

## **DISCUSSION**

The Magistrate Judge recommends granting Defendant's motion for summary judgment because Plaintiff has failed to establish a prima facie case for her failure to accommodate and wrongful termination claims under the Americans with Disabilities Act ("ADA") and because Defendant supplied a legitimate, nondiscriminatory reason for the termination and Plaintiff failed to forecast evidence showing that reason to be pretextual.[2]

---

[1] The Vocational Assessment was first entered into the record as an exhibit to Plaintiff's motion for partial summary judgment. [*See* Doc. 24-5.] Plaintiff asserts that the Vocational Assessment was produced to Defendant as part of Plaintiff's Rule 26(a)(2) Expert Testimony Disclosure on April 4, 2023. [Doc. 42 at 14.] The Magistrate Judge correctly noted that the Medda Report was not in the record at the time she issued the Report and was only referenced in the Vocational Assessment. [Doc. 38 at 6 n.3; *see* Doc. 24-5 at 2–3.] Plaintiff attached the full Medda Report to her objections to the Report [*see* Doc. 42-2] and argues that it has been available to Defendant as part of Plaintiff's medical file [*see* Doc. 42 at 15].

[2] Plaintiff's Complaint alleges general causes of action for "Violation of the ADA" and "Retaliation in Violation of the ADA." [*See* Doc. 1 at 3–5.] The Magistrate Judge construed Plaintiff's allegations as asserting causes of action for failure to accommodate and wrongful termination [Doc. 38 at 9–15], and the Court agrees. Further, because the Magistrate Judge concluded that Plaintiff failed to establish a prima facie case as to either of these claims, she analyzed Plaintiff's claims together, and this Court will do the same.

[Doc. 38.] The Court will address these claims seriatim.

**Failure to Accommodate and Wrongful Termination Under the ADA**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This includes "not making reasonable accommodations." 42 U.S.C. § 12112(b)(5)(A).

To establish a claim for a failure to accommodate, a plaintiff must show that (1) she suffers a disability; (2) her employer had notice of the disability; (3) with reasonable accommodations, she is otherwise qualified to perform the essential functions employment position in question; and (4) her employer refuses to make such reasonable accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). "The plaintiff bears both (1) the burden of identifying an accommodation that would allow a qualified individual to perform the job, and (2) the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Maffett v. City of Columbia*, No. 3:19-cv-0832-MGL, 2021 WL 4237189, at *7 (D.S.C. Sept. 17, 2021). "A reasonable accommodation is one that is feasible or plausible." *Id*. (internal quotation marks omitted).

To establish a prima facie claim for ADA wrongful termination, a plaintiff must show that "(1) she was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination."

7

*Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004).

Where she presents no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Plaintiff's failure to accommodate and wrongful termination claims under the ADA. *See Morgan v. Wells Fargo Bank, Nat'l Ass'n*, 585 F. App'x 152, 152–53 (4th Cir. 2014). Therefore, absent evidence of discrimination and where the relevant prima facie case is established, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the alleged failure to accommodate or wrongful termination, and the plaintiff bears the burden of showing that reason is pretext. *McDonnell Douglas*, 411 U.S. at 802–04.

**The Magistrate Judge's Conclusions**

The Magistrate Judge concluded that Plaintiff failed to establish a prima facie case because she failed to demonstrate that a position was available at the relevant times for which she was qualified and could perform the essential functions with or without reasonable accommodations. [Doc. 38 at 9–14.] Plaintiff's second set of restrictions provided in the Karunakar Release specified a lifting restriction of 0–5 pounds, and the Magistrate Judge concluded that "it appears undisputed that Plaintiff's position as Ceramist required the ability to lift more than 0–5 pounds." [*Id*. at 13.] The Magistrate Judge declined to consider the Vocational Assessment's finding that Plaintiff could lift up to 20 pounds, because there was no indication that the Functional Capacity Study or Medda Report cited and relied upon by the Vocational Assessment were ever communicated to Defendant. [*Id*. at 13 n.6.] The Magistrate Judge further noted that Defendant is not liable for failing to engage in the interactive process because Plaintiff

failed to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position. [*Id*. at 14 n.7.] The Magistrate Judge also concluded as to the wrongful termination claim that Defendant supplied a legitimate, nondiscriminatory reason for the termination in that there was no position available that would meet Plaintiff's restrictions and Plaintiff failed to forecast evidence that that reason was pretext for illegal discrimination. [*Id*. at 14.]

**Plaintiff's Objections**

In her objections, Plaintiff argues that the Report should be rejected because the Magistrate Judge "made assumptions and ignored disputed issues of material fact" in concluding that Plaintiff failed to establish a prima facie case. [Doc. 42 at 11.] Specifically, Plaintiff asserts that she satisfied her burden to forecast facts showing available jobs between June 2021 and her termination in March 2022 that she could have performed and that the Magistrate Judge incorrectly concluded that Plaintiff was unqualified for these positions. [*Id*. at 11–12.] Plaintiff argues that the Magistrate Judge erred in failing to consider that Plaintiff had no lifting restrictions on her right hand, citing deposition testimony from Defendant admitting that there were no facts to suggest Plaintiff was limited in the use of *both* of her hands. [*Id*. at 12–13 (citing Docs. 24-3 at 48; 24-2 at 52).] Plaintiff further argues that the Magistrate Judge erred in concluding that the limitations contained in the Full Duty Job Description were prepared by Plaintiff's physician because Sturgis testified that Defendant's insurance company prepared the document.[3] [*Id*. at 13.] Finally, Plaintiff asserts that the Magistrate Judge acted in error

---

[3] As the Magistrate Judge noted, the Full Duty Job Description has a stamp in the bottom right hand corner delineating Dr. Karunakar as the provider. [Doc. 38 at 5 (citing Docs.

9

by dismissing the Functional Capacity Study and Medda Report because both create genuine issues of material fact as to the true physical limitations of Plaintiff's left hand. [*Id*. at 14–15.]

**Analysis**

The Court agrees with the Magistrate Judge that Plaintiff has failed to establish a prima facie case for her ADA claims.  In the Court's view, the most salient issue raised by Plaintiff's objections is whether the Functional Capacity Study and/or Medda Report create a genuine dispute of material fact as to Plaintiff's abilities to perform the essential functions of the positions that became available after Plaintiff was released back to work.

To begin, it is undisputed that Plaintiff has forecasted four positions that became available after Plaintiff was released to work, including a Ceramist position available in early 2022.  [*See* Doc. 42 at 6–7; *see also* Doc. 24-6 at 2–5.]  Thus, the Court must first determine the essential functions of these positions.[4]  A function is essential as long as it "bears more than a marginal relationship to the job at issue."  *Rohan*, 375 F.3d at 279 (cleaned up).  The ADA provides that, in any determination of a position's essential functions, "consideration shall be given to the employer's judgment."  42 U.S.C. § 12111(8); *see also Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004, 1009 (4th Cir. 2020) ("[T]he decision about a position's essential function belongs, in the first instance,

---

25-4 at 43, 36-1 at 6).]  Even if Dr. Karunakar did not personally prepare the Full Duty Job Description, he clearly adopted it in reaching his conclusions, stating that Plaintiff "[m]ay return to work with [the] restrictions indicated on Full Duty Job Description form provided." [Doc. 25-4 at 42.]  Thus, Plaintiff's objections as to the Magistrate Judge's reliance on this document are overruled.

[4] The Court assumes, without argument to the contrary from Defendant, that all the forecasted positions had relatively similar physical requirements to the Ceramist position.

to the employer; it accordingly merits considerable deference from the courts." (cleaned up)). Based on a review of the evidence, there is no reason to doubt the Magistrate Judge's conclusion that the essential functions of the Ceramist position include lifting more than five pounds. [Doc. 38 at 13; *see, e.g.*, Docs. 36 at 1–2 (Plaintiff acknowledging that "[i]n order to perform the essential functions of her position as a [Ceramist], Plaintiff needed to be able to lift 8–10 pounds."); 24-3 at 62–63 (Ceramist job description requiring ability to lift 25 pounds); *see also* Docs. 24-2 at 53 (75:8–21); 24-3 at 48 (86:20–25).]

The next question is whether Plaintiff was a "qualified individual" under the ADA; that is, whether she could perform this essential function with or without a reasonable accommodation. 42 U.S.C. § 12111(8). Here, Plaintiff has not identified any reasonable accommodation that would have been possible given the restrictions that Dr. Karunakar included in the Karunakar Release, which limited Plaintiff to lifting 0-5 pounds for between 30 minutes and 2.5 hours per day. [Doc. 25-4 at 42–43.] Defendant had been notified of that limitation [Doc. 24-2 at 49–50 (71:22–72:9)], and Plaintiff has not forecasted any evidence that she informed Defendant that the limitation had ever been lifted. As such, Defendant was entitled to rely on it. *See, e.g., Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) (holding that the defendant was "entitled to rely and act upon the written advice from [the plaintiff's] physician" when deciding whether it could accommodate her restrictions); *Wulff v. Sentara Healthcare, Inc.*, 513 F. App'x 267, 269 n.2 (4th Cir. 2013) (per curiam) (holding that an employer was permitted to "abide by the restrictions shown on the form" it received from an employee's physician, even where the employee "contest[ed] the accuracy of this form and contend[ed] that it overstated her restrictions."); *Young v. United Parcel Serv.*, No. DKC 08-2586, 2011 WL 3510997, at *3

(D. Md. Aug. 9, 2011) ("There is no case supporting the notion that an employer must question a medical provider's judgment and independently divine whether an employee is truly able to work."); *see also Lorenzen v. Taste Traditions of Omaha, L.L.C.*, No. 8:16-CV-27, 2017 WL 6539024, at *6 (D. Neb. Sept. 29, 2017) ("It was [the plaintiff's] initial burden to identify his disability and resulting limitations, and the scope of [the defendant's] duty to accommodate those limitations is defined by the notice it was given."); *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 790 (8th Cir. 2019) (holding that the defendant was entitled to rely on doctor's letter as establishing an ongoing restriction because the letter "identified no ending date" for the plaintiff's restriction and the defendant "never received any additional information from [plaintiff's] physician").  Plaintiff's insistence that she could actually do the work did not change that.  *See Alexander,* 321 F.3d at 727 (where an employee presents a doctor's recommendation restricting her from performing an essential function, "the employee's belief or opinion that she can do the function is simply irrelevant"); *Young*, 2011 WL 3510997, at *3 (holding that the defendant was not "required to let [the plaintiff] work merely because she insisted she was able to").

Plaintiff argues that Defendant knew that the weight-lifting limitations in the Karunakar Release were too strict given Plaintiff's actual abilities.  She first asserts that Defendant should have surmised that the lifting restriction in the Karunakar Release pertained only to her left hand and thus did not in fact limit her from lifting more than five pounds, so long as she did not use her left hand for the lifting.  [Doc. 42 at 12–13.]  In support of her argument, Plaintiff cites to testimony from Joseph "Tripp" Sherer, Defendant's President and owner, that he did not have any information "that would indicate that in June of 2021 [Plaintiff] couldn't use both hands" [Doc. 24-3 (48 at 7–12)],

12

and to testimony of Sturgis that she did not have any information that Plaintiff "was not able to use both hands at the same time" [Doc. 24-2 at 52 (74 at 17–22)].  However, both of these statements were made in response to questions about whether Plaintiff would have been able to satisfy a listed requirement that she be able to "constant[ly] use . . . both hands."  [Docs. 24-2 at 52 (72 at 12–15); 24-3 at (48 at 5–7).]  They do not address Plaintiff's ability to lift more than five pounds, and Plaintiff does not point to any evidence that Defendant actually believed that the five-pound weight-lifting limitation was too strict, let alone that the limitation had ever been lifted.[5]  Nonetheless, Defendant was entitled to rely on the Karunakar Release, which did not specify that the lifting restriction applied only to Plaintiff's injured hand, but instead provided an overall lifting restriction of 0–5 pounds.  *See Alexander,* 321 F.3d at 727 (a defendant is "entitled to rely and act upon the written advice from [a plaintiff's] physician" when deciding whether it can accommodate her restrictions).

Plaintiff also points to various documents, including the Functional Capacity Study and the Medda Report, that she argues contradict the lifting requirement in the Karunakar Release.  [Doc. 42 at 14–15.]  However, Plaintiff has not forecasted evidence that Defendant was actually aware of the existence of either of these documents when the positions in question became available.  Indeed, Defendant points to Sturgis's testimony where she stated that she was not aware that Plaintiff underwent a functional capacity

---

[5] Plaintiff argues in her objections that after the accident she actually was able to lift 8 to 10 pounds.  [Doc. 42 at 17 (citing Doc. 24-2 at 82–83).]  However, the evidence she identifies does not support an inference that Defendant knew or believed she could lift that amount after the accident.

13

evaluation and stated that Plaintiff did not share that with Defendant.[6]  [Doc. 24-2 at 73; *see* Doc. 32-1 at 6.]  Further, nothing in the Medda Report actually contradicted the lifting restrictions in the Karunakar Release, but merely provided impairment ratings for Plaintiff's left hip and wrist.  [*See* Doc. 42-2.]

Finally, Plaintiff argues that her numerous calls to Defendant offering on various occasions to showcase her ability to perform the essential functions of her old job—or any other open job—triggered Defendant's duty to engage in the interactive accommodations process.  [Doc. 42 at 15–17.]  However, as the Magistrate Judge correctly observed, "the Fourth Circuit has specifically noted 'an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position.'"  [Doc. 38 at 14 n.7 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015)).]  Accordingly, whether her calls triggered the interactive process is immaterial to Defendant's

---

[6] Plaintiff argues that she has identified evidence that Defendant was aware of the Medda Report because "Dr. Medda was a physician provided by Defendant to treat her workers compensation injuries"; "[t]he records were part of her medical file"; "Dr. Medda's report was prepared on June 22, 2021"; "Plaintiff's workers compensation claim was settled on November 2, 2021"; and "[t]he impairment ratings in the medical records were part of that settlement."  [Doc. 42 at 15.]  Plaintiff also adds that "it is undisputed [that] Defendant was fully aware of Plaintiff's release with an impairment rating on her non-dominant hand per the note signed by Sturgis."  [*Id.* (citing Doc. 24-2 at 90).]  However, Plaintiff does not cite to any deposition testimony or other evidence that Defendant had seen or was aware of the Medda Report, and a factfinder could not reasonably infer this knowledge based solely on the bare assertion that the release was part of her workers' compensation file and settlement.  Further, the note signed by Sturgis memorializing her May 11, 2021, call with Plaintiff does not state anything about the Medda Report or an impairment rating—instead, it mentions only that Plaintiff would continue to receive workers compensation benefits, as Sturgis has otherwise testified.  [Doc. 24-2 at 90; *see id.* at 46–47 (68:25–69:4).]

14

entitlement to summary judgment on the basis that Plaintiff was not qualified, based on the information in Defendant's possession, to perform any of the jobs in question with or without an accommodation. And, as mentioned, Plaintiff's offer to showcase her abilities is irrelevant because Defendant was entitled to rely on the Karunakar Release. *See Alexander,* 321 F.3d at 727 (where an employee presents a doctor's recommendation restricting her from performing an essential function, "the employee's belief or opinion that she can do the function is simply irrelevant")

## **CONCLUSION**

For the reasons discussed, the Court accepts the Report and Recommendation of the Magistrate Judge and incorporates it by reference. Therefore, Defendant's motion for summary judgment [Doc. 25] is GRANTED, and Plaintiff's motion for partial summary judgment [Doc. 24] is DENIED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

December 18, 2024
Columbia, South Carolina